UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re

Aleksandr Virovlyanskiy,

                Debtor.

---------------------------------------------------------X
Juliya Virovlyanskaya,

                Plaintiff,

-against-

Aleksandr Virovlyanskiy,

                Defendant.

---------------------------------------------------------X

Chapter 7

Case No. 11-45486-CEC

Adv. Pro. No. 11-1469-CEC

## DECISION

APPEARANCES:

| | |
|---|---|
| Juliya Virovlyanskaya | Boris Nikhman, Esq. |
| 405 East 105th Street, Apt. #20F | 2903 Ocean Avenue |
| New York, NY 10029 | Brooklyn, NY 11235 |
| Plaintiff | Attorney for Defendant |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

Juliya Virovlyanskaya (the "Plaintiff") commenced this adversary proceeding seeking to deny her estranged husband, Aleksandr Virovlyanskiy (the "Debtor"), a discharge pursuant to 11 U.S.C § 727(a)[1]. For the reasons explained in this decision, the Debtor is denied a discharge under § 727(a)(4)(A), because his Statement of Financial Affairs failed to disclose compensation earned in 2009 and 2010, and because his Schedule I contained the misrepresentation that he had been unemployed since 2008.

## Jurisdiction

This Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 157(b)(2)(J) and 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## Background

The following facts are undisputed.

On June 25, 2011, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. The Debtor listed his address in the petition as 6801 19 Avenue, #5O, Brooklyn, NY 11204, which is his parents' apartment. His debt primarily consists of child support arrears owed to the Plaintiff and credit card debt. The Debtor stated in Schedule I that, at the time of the filing, he had been unemployed for "2 years and 7 months." The Debtor also stated in Schedule I, and in the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, that his only source of income is support from his parents totaling $400 per month. The Debtor's Statement of Financial Affairs stated that he received unemployment benefits in 2009 and 2010, and received financial support from his parents in 2010 and 2011. The Debtor also filed an

---

[1] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code, Title 11, U.S.C.

affidavit declaring that he is unable to file pay stubs because he has "been unemployed since January, 2009."[2]  (Aff. dated June 8, 2011, Case No. 11-45486-CEC, ECF No. 1.)

On September 15, 2011, approximately three months after filing, the Debtor amended his Statement of Financial Affairs to disclose $9,600 of income earned from employment in 2009, and $2,400 in 2010.  (Am. Stmt. Fin. Affairs., Case No. 11-45486-CEC, ECF No. 9 at 1).

On September 29, 2011, the Plaintiff commenced this adversary proceeding seeking to deny the Debtor a discharge based upon allegations that (1) the Debtor misrepresented his employment history and omitted income on the schedules and Statement of Financial Affairs; (2) the Debtor is concealing assets from the chapter 7 trustee; and (3) the Debtor misrepresented his residence on his petition.

On October 6, 2011, the chapter 7 trustee filed a Report of No Distribution, stating that he "made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law."  (Report of No Distribution, Case No. 11-45486-CEC.)

On July 31, 2012, the trial in this adversary proceeding was held.

### Legal Standard

An individual debtor under chapter 7 of the Bankruptcy Code may receive a discharge of debt pursuant to § 727.  The purpose of a discharge is to allow the "'honest but unfortunate debtor' to begin a new life free from debt." D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 234 (2d Cir. 2006) (quoting Grogan v. Garner, 498 U.S. 279, 286-287 (1991)). "However, a discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor." Desiderio v. Parikh (In re Parikh), 456 B.R. 4, 27-28 (Bankr. E.D.N.Y.

---

[2] This affidavit was also filed on June 27, 2011.  (Aff. dated June 8, 2011, Case No. 11-45486-CEC, ECF No. 9.)

2011) (citing <u>Cong. Talcott Corp. v. Sicari (In re Sicari)</u>, 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994)).

The denial of a debtor's discharge is also governed by § 727, which provides, in pertinent part:

> (a) The court shall grant the debtor a discharge, unless--
>
> \*         \*         \*
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition;
>
> \*         \*         \*
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case--
>
> > (A) made a false oath or account;
>
> \*         \*         \*
>
> (5) the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(2),(4),(5).

The denial of a discharge is "an extreme penalty for wrongdoing," and therefore, § 727 "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" <u>State Bank of India v. Chalasani (In re Chalasani)</u>, 92 F.3d 1300, 1310

(2d Cir. 1996) (quoting Bank of Pa. v. Adlman (In re Adlman), 541 F.2d 999, 1003 (2d Cir. 1976)).  The objecting creditor bears the burden to establish the requirements of § 727 by a preponderance of the evidence.  Parikh, 456 B.R. at 28.  See also Fed. R. Bankr. P. 4005.

To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must establish that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case.  Dubrowsky v. Estate of Perlbinder (In re Dubrowsky), 244 B.R. 560, 572 (E.D.N.Y. 2000).

A debtor's false statements and omissions in a bankruptcy petition, statements, and schedules may satisfy the first two elements of § 727(a)(4)(A).  Micro Connections, Inc. v. Shah (In re Shah), 388 B.R. 23, 38 (Bankr. E.D.N.Y. 2008).  The first two factors are typically satisfied when a debtor files an amended petition or amended schedules and statements.  To satisfy the third and fourth elements of § 727(a)(4)(A), the plaintiff must prove that the debtor made the misstatements or omissions knowingly and with actual fraudulent intent.  Shah, 388 B.R. at 38.

Once a plaintiff produces evidence of a false statement, the burden shifts to the debtor to produce a "credible explanation."  Micro Connections, Inc. v. Shah (In re Shah), 388 B.R. 23, 37 (Bankr. E.D.N.Y. 2008); Casa Invs. Co. v. Brenes (In re Brenes), 261 B.R. 322, 334 (Bankr. D. Conn. 2001).  If the debtor fails to provide evidence that the false statement was unintentional, or to provide a credible explanation, a court may infer fraudulent intent.  Pergament v. DeRise (In re DeRise), 394 B.R. 677, 691 (Bankr. E.D.N.Y. 2008).  However, the overall burden of proof remains with the moving party.  See., e.g., BTE Concrete Formwork, LLC v. Arbaney (In re Arbaney), 345 B.R. 293, 301 (Bankr. D. Colo. 2006).

Here, the Debtor should be denied a discharge because he omitted income earned in 2009 and 2010 from the Statement of Financial Affairs, and because he misrepresented on Schedule I that he was unemployed since November 2008. It is undisputed that the Debtor did not originally show in the Statement of Financial Affairs the income he earned in 2009 and 2010 while living in Russia, only disclosing it more than two and a half months later on an Amended Statement of Financial Affairs. (Tr. 9-10; Stmt. of Fin. Affairs, Case No. 11-45486-CEC, ECF No. 1; Am. Stmt. of Fin. Affairs, Case No. 11-45486-CEC, ECF No. 9.)

The first explanation proffered by the Debtor for his failure to disclose the income earned in 2009 and 2010 on his original Statement of Financial Affairs was that it was too difficult to convert Russian rubles to American dollars. (Tr. at 11.) This explanation is wholly unpersuasive. The Debtor or his attorney could have used any one of the conversion calculators available on the internet. Alternatively, the Debtor could have estimated the amount of American dollars, or listed the income in Russian rubles, and then filed an amended Statement of Financial Affairs once he calculated the conversion.

The Debtor's second explanation for this omission is that his attorney told him that only income earned in the United States must be disclosed. (Tr. at 11.) He testified that his attorney immediately filed the Amended Statement of Financial Affairs once the Trustee informed them all income earned in 2009 and 2010 must be disclosed, no matter where it was earned. (Tr. at 11.)

The Debtor's lack of credibility and veracity was repeatedly demonstrated during the trial of this matter. For example, the Debtor admitted that he lied to the New York State Court presiding over his divorce proceedings in October 2010. (Tr. at 76.) Then, in seeking to explain or justify this conduct, the Debtor proffered a series of further lies to this Court. The Debtor

represented to the state court that he could not telephonically appear at a matrimonial hearing because of his job. (Tr. at 75-76.) When questioned by Plaintiff about this statement, he acknowledged that he was actually unemployed at the time, and stated that the real reason he couldn't appear was because he had other court hearings in Russia. (Tr. at 75-76, 81.) The Debtor testified:

> I cannot make call because, -- so I couldn't explain everything to the Judge. So do I need to explain him that I had a lot of hearings over there too, and put, I just put because of my jobs. It's easy for me.

(Tr. at 76.) When the Plaintiff challenged this explanation, he changed his story again, stating that he couldn't appear telephonically because he was trying to find a job, and when this explanation too was challenged, he testified that he could not remember why he couldn't appear. (Tr. at 81.) The Debtor also initially testified that his adjournment request was not granted, and then, when challenged by the Plaintiff, testified that he couldn't remember whether his request was granted. (Tr. at 79.)

The record is replete with other instances where the Debtor admitted making false statements to other courts or made misrepresentations or misstatements in this trial, or where the Debtor's testimony was entirely unbelievable. See Tr. at 9-10 (the Debtor admitted that he collected unemployment benefits from the United States while he was working in Russia, and asserted that the agency representative told him it was permissible to do so); Tr. at 31 (the Debtor testified that, while living in Russia, he did not visit France, but then admitted that he traveled to France when questioned about a picture of him in from of the Eiffel Tower); Tr. at 125 (when questioned whether he concealed his unemployment benefits from the state court judge in the child support proceedings, the Debtor testified that "[to] [t]ell the truth, I don't remember what I submit at those time"); Tr. at 134 -135 (the Debtor admitted that he misrepresented on his

Russian divorce petition that he and the Plaintiff have only one child, instead of three, and offered the implausible explanation that the Russian court employee told him to do so because he did not have the birth certificates of the other two children to prove their existence).

Given the Debtor's demonstrated lack of credibility, and the fact that he initially proffered the preposterous explanation that he omitted his 2009 and 2010 income from the Statement of Financial Affairs because he was unable to calculate the conversion of the wages earned in rubles to dollars, his alternative explanation for this false statement - - that counsel told him to disclose only income earned in the United States - - cannot be credited. Because the Debtor has failed to provide a credible explanation for his misrepresentations, it may be inferred that the Debtor omitted his 2009 and 2010 income in the Statement of Financial Affairs with fraudulent intent. See DeRise, 394 B.R. at 691 (court may infer fraudulent intent when the debtor does not provide a credible explanation for the false statement).

The Debtor's subsequent disclosure of the income in an amended Statement of Financial Affairs does not lead to a different conclusion. The Plaintiff alleges that she informed the Trustee of the Debtor's omissions at the § 341 meeting of creditors. (Tr. at 10.) The Debtor did not dispute this allegation; rather he conceded that the income was disclosed after the Trustee informed him of his obligation to do so. (Tr. at 11.) Therefore, while it is true that "corrective disclosure before an objection to discharge is filed may be indicative of innocent intent," Shah, 388 B.R. at 39, in this case, it appears that the income was disclosed only after his misrepresentation was exposed by the Plaintiff. In any event, an amendment does not cure the initial misstatement or omission. Moreo v. Rossi (In re Moreo), 437 B.R. 40, 63 (E.D.N.Y. 2010). Therefore, the third and fourth requirements of § 727(a)(4)(A) are satisfied.

It should be also noted that the Debtor did not amend Schedule I, which contains the false statement that, as of the date of the petition, the Debtor was unemployed for two years and seven months, since November 25, 2008. (Schedule I, Case No. 11-45486-CEC, ECF No. 1). Additionally, the Debtor's affidavit filed on June 25, 2011 and June 27, 2011 contains the false statement that he was unemployed since January, 2009, which is inconsistent with Schedule I, the Statement of Financial Affairs, and the Amended Statement of Financial Affairs. (Aff. dated June 8, 2011, Case No. 11-45486-CEC, ECF Nos. 1 and 3.) A court may infer fraudulent intent from multiple omissions or misstatements in a debtor's petition, schedules, and statements. See Diorio v. Kreisler-Borg Constr. Co. (In re Diorio), 407 F.2d 1330, 1331 (2d Cir. 1969); Moreo, 437 B.R. at 62; Dubrowsky, 244 B.R. at 576; Castillo v. Casado (In re Casado), 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995).

The Debtor's omission of his 2009 and 2010 income from the Statement of Financial Affairs, and the misstatements concerning his employment history, are materially related to the bankruptcy case. "An item is material if it is related to the debtor's 'business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property.'" Moreo, 437 B.R. at 65 (quoting Carlucci & Legum v. Murray (In re Murray), 249 B.R. 223, 230 (E.D.N.Y. 2000)). The income earned in 2009 and 2010, specifically required to be disclosed in the Statement of Financial Affairs, and his employment history for 2009 and 2010, are material because they relate to the Debtor's business transactions and dealings, and the potential discovery of assets of the estate. Therefore, the final element of § 727(a)(4)(A) is satisfied. This conclusion is not affected by chapter 7 trustee's Report of No Distribution; "[m]ateriality does not require a showing that the creditors were prejudiced by the false

9

statement." Murray, 249 B.R. at 229.  As one court explained:

> The fact that the Debtor has failed to disclose its interest in property that turns out to have little or no value to the estate may be the basis for denying the debtor its discharge because "the determination of relevance and importance of the question is not for the Debtor to make.  It is the Debtor's role simply to consider the question carefully and answer it completely and accurately."

Bank of India v. Sapru (In re Sapru), 127 B.R. 306, 315 (Bankr. E.D.N.Y. 1991) (quoting Guardian Indus. Prods., Inc. v. Diodati (In re Diodati), 9 B.R. 804, 808 (Bankr. D. Mass. 1981)).

## Conclusion

For the foregoing reasons, the Debtor is denied a discharge under § 727(a)(4)(A).  In light of this conclusion, the Plaintiff's claims seeking to deny the Debtor's discharge under § 727(a)(2) and (a)(5) need not be addressed.  A separate order and a judgment will issue.



**Dated: Brooklyn, New York**
**January 11, 2013**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**